UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AARON ABADI,

Plaintiff,

-v-

CITY OF NEW YORK,

Defendant.

---

21 Civ. 8071 (PAE)

OPINION &
ORDER

PAUL A. ENGELMAYER, District Judge:

*Pro se* plaintiff Aaron Abadi brings this action under 42 U.S.C. § 1983 and state common

law[1] against the City of New York (the "City"). He alleges that Emergency Executive Order 225

("EEO 225"), which requires persons to be vaccinated against COVID-19 to enter indoor dining,

entertainment, recreation, and fitness venues, and Executive Order 78 ("EO 78"), which requires

employees of the City and City contractors to be vaccinated or take weekly tests for COVID-19,

violate his constitutional right to equal protection and bodily integrity and subject him to false

---

[1] Insofar as Abadi's original Complaint alleges that his rights under the Fourteenth Amendment
have been violated, the Court construes this claim as arising under 42 U.S.C. § 1983. *See Bertin
v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) ("We liberally construe pleadings and briefs
submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they
suggest[.]'") (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)) (citations omitted);
*Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (claim of breach of constitutional
rights against municipality under § 1983 requires "(1) an official policy or custom that (2) causes
the plaintiff to be subjected to (3) a denial of a constitutional right") (quoting *Batista v.
Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)). Insofar as the Complaint alleges false
imprisonment in violation of state law, the elements of such a claim under § 1983 parallel the
elements of such a claim under New York law. *Kaplan v. Cnty. of Orange*, 528 F. Supp. 3d 141,
169 (S.D.N.Y. 2021) ("When confronted with a false imprisonment claim under § 1983, courts
look to New York state law to determine the elements of this cause of action.") (citing cases).

imprisonment. By order dated September 29, 2021, Chief Judge Swain granted Abadi's request to proceed *in forma pauperis*.

For the reasons below, the Court denies Abadi's request for a preliminary injunction.

## I.   Background

### A.   The Executive Orders

The two Executive Orders challenged here pertain, respectively, to patrons of certain indoor establishments, and to City employees and contractors. The Court reviews each Order— including its stated factual bases, relevant provisions, subsequent orders amending or repealing it, and precedents in this Circuit addressing it—in turn.

#### 1.   Indoor Entertainment, Recreation, Dining, and Fitness

##### *a.   EEO 225 and EEO 317*

On August 16, 2021, then-Mayor Bill de Blasio issued Emergency Executive Order 225. *See* Dkt. 3 ("Mot."), Ex. G; *see also* Dkt. 18 ("Paul Decl."), Ex. A. The Order stated that it was enacted "because of the propensity of the [COVID-19] virus to spread person-to-person," the spread of new variants, the effectiveness of vaccination, and the risks entailed by gatherings in such spaces, which "generally involve groups of unassociated people interacting for a substantial period of time." Mot., Ex. G at 1–2. The Order requires that, with limited exceptions,[2] patrons

---

[2] The Order includes exceptions for:

    a.  Individuals entering for a quick and limited purpose (for example, using the restroom, placing or picking up an order or service, changing clothes in a locker room, or performing necessary repairs);

    b.  A nonresident performing artist not regularly employed by the covered entity while they are in a covered premises for purposes of performing;

    c.  A nonresident professional athlete/sports team who enters a covered premises as part of their regular employment for purposes of competing; and

    d.  A nonresident individual accompanying a performing artist or professional athlete/sports team into a covered premises as part of their regular employment

age 12 or older of indoor entertainment and recreational settings,[3] indoor food services, and indoor gyms and fitness areas show, as a condition of entry, (1) proof of vaccination against COVID-19 and (2) corresponding identification. *Id.* § 1; *see id.* § 5.

On December 15, 2021, Mayor de Blasio issued Emergency Executive Order 317 ("EEO 317"), which bolstered EEO 225's provisions. *See* Dkt. 19 ("Def. Mem.") at 1 n.2; Paul Decl., Ex. B. EEO 317 was enacted for reasons including the ongoing local state of emergency caused by COVID-19; the authorization of emergency use of the Pfizer-BioNTech COVID-19 vaccine for children ages 5 to 11; dramatically increased COVID-19 transmission and hospitalization rates; and the arrival of the Omicron variant. Paul Decl., Ex. B at 1. It amended EEO 225 in two ways relevant here. First, it required that indoor entertainment and recreational settings, indoor food services, and indoor gyms and fitness settings require any patron age 5 or older—rather than age 12 or older—provide proof of vaccination, and, for any patron 18 years or older, matching identification. *Id.* § 2. Second, EEO 317 required the same for any employee of such entities. *Id.*[4]

>    b.    *Relevant precedent*

Courts in the Circuit have denied emergency relief to plaintiffs challenging EEO 225 and similar measures.

---

>    so long as the performing artist or professional athlete/sports team are performing or competing in the covered premises.

Mot., Ex. G § 2. Such persons must either maintain a six-foot distance between themselves and others or wear a face mask at all times. *Id.*

[3] These include movie theaters, music venues, casinos, botanical gardens, museums, aquariums, zoos, sports arenas, and bowling alleys. *See* Mot., Ex. G § 5(c).

[4] On December 23, 2021, via EEO 326, Mayor de Blasio extended EEO 317's duration. *See* Paul Decl., Ex. C. It is "currently in effect pursuant to EEO No. 326." Def. Mem. at 1 n.2.

On October 12, 2021, Judge Brian P. Cogan, of the Eastern District of New York, denied a preliminary injunction challenging EEO 225 and two other EEOs. *Dixon v. De Blasio*, --- F. Supp. 3d ----, 2021 WL 4750187, at *1 (E.D.N.Y. Oct. 12, 2021).  Plaintiffs had argued that their constitutional rights under the Thirteenth and Fourteenth Amendments were being violated; that they were subject to an uncompensated taking; and that the EEOs violated New York state law. *Id.* Judge Cogan held, *inter alia,* that plaintiffs' equal protection claim failed because they did not show that the EEOs at issue, including EEO 225, "target a protected class, are the result of animus, or are not rationally related to a legitimate government interest." *Id.* at *4.  He further noted that, as to plaintiffs' substantive due process challenge, the EEO does not "forc[e] New Yorkers to get vaccinated.  [It is] merely placing restrictions on those who choose not to." *Id.* at *9.  Finally, Judge Cogan noted that "vaccination is one of the most effective" tools to combat COVID-19, and the EEOs "address the risks arising from a substantial portion of the population remaining unvaccinated[.]" *Id.* at *14.

Similarly, on December 3, 2021, Judge Colleen McMahon of this District rejected an application for emergency relief by a group of small theaters and comedy clubs, which, as covered entities under the relevant Executive Orders, are required to have their patrons and employees present proof of vaccination. *See Clementine Co. LLC. v. de Blasio*, No. 21 Civ. 7779 (CM), 2021 WL 5756398, at *1 (S.D.N.Y. Dec. 3, 2021).  Those plaintiffs had sought a preliminary injunction on the grounds that their First and Fourteenth Amendment rights were being violated. *Id.* Judge McMahon held that they had no standing to challenge the orders, and that even if they did, their challenges were unlikely to succeed on the merits. *Id.* at *5.  Judge McMahon explained that indoor recreational businesses were subject to the vaccine requirements "to advance legitimate public health goals." *Id.* at *16.  She further noted that the balance of the

equities and public interest weighed against plaintiffs' challenge, given the dangers COVID-19

poses; the effectiveness of vaccination; and the reasonableness of the measures with respect to

indoor recreational activities. *Id.*

Finally, early this year, Judge Ronnie Abrams of this District also found that a *pro se*

plaintiff seeking emergency relief against the vaccine requirement for certain indoor facilities

was unlikely to succeed on his claims. *Commey v. Adams*, No. 22 Civ. 0018 (RA), 2022 WL

62155, at *2 (S.D.N.Y. Jan. 6, 2022) (collecting cases).[5]  In sum, no emergency challenge to

EEO 225 or its related orders has succeeded, including on constitutional grounds.

### 2.    City Employees and Contractors

#### a.    EO 78 and subsequent orders

On August 31, 2021, Mayor de Blasio issued EO 78.  Mot., Ex. H at 1; *see* Paul Decl.,

Ex. D.  It created a mandatory vaccination or test requirement for City employees and covered

employees of City contractors.  It was enacted as a result of the emergence of new variants of

COVID-19; the effectiveness of vaccination in preventing the spread of COVID-19 and its

beneficial results for vaccine recipients and those with whom they come into contact; City

workers' provision of services to City residents; and the emerging scientific understanding of the

life-saving effects of the City's vaccination campaign.  Mot., Ex. H at 1.

Specifically, the order required City employees—meaning any "full or part-time

employee, intern, or volunteer," *id.* § 4(e)—to either (1) provide their agency or office with proof

of full vaccination by September 13, 2021, or (2) beginning on September 13, 2021, and every

week until proof of full vaccination is submitted, provide their agency or office with proof of a

---

[5] Judge Abrams further noted that the plaintiff had failed to allege that he was "precluded from
obtaining or maintaining employment" as a result of any Executive Orders. *Commey*, 2022 WL
62155, at *1 n.1.

negative COVID-19 PCR test. *Id.* § 1. If a City employee failed to comply, he or she "may be subject to disciplinary action." *Id.* § 2. City agencies were also obliged to have their contractors do the same. *Id.* § 3; *see id.* § 4(b)–(d) (defining "contract," "contractor," and "covered employee").

On October 20, 2021, Mayor de Blasio amended and partially repealed EO 78 with EO 83. *See* Paul Decl., Ex. G. The same day, the City's Commissioner of Health and Mental Hygiene, Dave A. Chokshi, issued an order requiring all City employees and contractors for human-service contracts to provide proof of vaccination by 5 p.m. on October 29, 2021. Paul Decl., Ex. E ¶¶ 2, 4. As support, it noted, *inter alia*, that the emergence of new and increasingly transmissible COVID-19 variants; the effectiveness of vaccines; that the unvaccinated and not fully vaccinated accounted for 96.1% of COVID-19 cases, 96.9% of COVID-19 hospitalizations, and 97.3% of COVID-deaths citywide; and that City employees and City contractors supply important services to City residents. *Id.* at 1–2. Accordingly, it stated that "a system of vaccination for individuals providing City services and working in City offices will potentially save lives, protect public health, and promote public safety." *Id.* at 2. Under the Order, the vaccination requirement could be met with (1) full vaccination; (2) a single-dose COVID-19 vaccine, even if two weeks had not passed since receipt of the vaccine; or (3) the first dose of a two-dose COVID-19 vaccine. *Id.* ¶¶ 2, 4. Employees who did not provide proof of such vaccination were to be excluded from their work premises beginning on November 1, 2021. *Id.*

¶ 3.[6]  As compared to EO 78, this order eliminated covered City employees' and contractors'

option to take weekly COVID-19 PCR tests rather than get vaccinated.[7]

> b.        *Relevant precedent*

The City's Executive Orders requiring vaccination for subsets of City workers have been

challenged unsuccessfully in this Circuit.

On October 15, 2021, the Second Circuit affirmed the denial of a preliminary injunction

sought by New York City Department of Education ("DOE") employees protesting the lack of an

opportunity to opt out of the vaccination requirement via weekly testing.  *See Maniscalco v. New*

*York City Dep't of Educ.*, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021), *affirming* No.

21 Civ. 5055, 2021 WL 4344267 (E.D.N.Y. Sept. 23, 2021).  The *Maniscalco* district court had

found that plaintiffs failed to show they were entitled to emergency relief on any of their claims,

including those based on substantive due process and equal protection.  It explained that "any

property right to employment that plaintiffs may claim does not rise to the level of a fundamental

right protected by substantive due process." 2021 WL 4344267, at *3.  And as to equal

protection, plaintiffs failed to identify a legally protected class, and there was a rational basis for

that Order's vaccine requirements. *Id.* at *5.

---

[6] These provisions did not apply to "uniformed Department of Corrections ('DOC') employees . . . unless such uniformed employee is assigned for any time to . . . Bellevue Hospital; Elmhurst Hospital; the DOC infirmary in North Infirmary Command; the DOC West Facility; or any clinic staffed by Correctional Health Services." Paul Decl., Ex. E ¶ 5.  Those employees were to provide proof of vaccination by November 30, 2021, and, until then, either provide proof of vaccination or a weekly negative COVID-19 PCR test. *Id.*  The order noted that there was an ongoing staff shortage at DOC facilities, justifying, as a means of protecting DOC inmates, the delay of the order's effective date as to DOC facilities. *Id.* at 2.  For similar reasons, on October 31, 2021, Commissioner Chokshi extended the requirement for employees or contractors of the Board of Elections to facilitate an orderly election.  *See* Paul Decl., Ex. F ¶ 3.

[7] Since Abadi brought this action, the City has announced similar measures for private-sector businesses. *See* Dkt. 13, Ex. A.

A separate Second Circuit panel later held that, facially, the vaccine requirement for DOE employees was neutral and generally applicable: "Its restrictions apply equally to those who choose to remain unvaccinated for any reason." *Kane v. De Blasio*, 19 F.4th 152, 164 (2d Cir. 2021). The panel further stated that such a requirement was "a reasonable exercise of the State's power to act to protect the public health." *Id.* at 166. It also found plaintiffs' equal protection challenge to the requirement unpersuasive. *Id.* at 167 n.14.

The Second Circuit has also rejected the bid by healthcare workers for a preliminary injunction against New York State's vaccination requirement. *See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021). The plaintiffs there made claims, *inter alia*, under the Fourteenth Amendment, alleging that their rights to privacy, medical freedom, and bodily autonomy had been violated. In finding that these challenges were unlikely to succeed on the merits, the Circuit noted that individuals who objected to receiving the vaccines "have a choice": "Vaccination is a condition of employment in the healthcare field; the State is not forcibly vaccinating healthcare workers." *Id.* at 293–94. Rejecting plaintiffs' contrary claims, the *We The Patriots* court noted that both the Circuit and the Supreme Court "have consistently recognized that the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional." *Id.* at 293 (citing cases).[8] As with EEO

---

[8] This decision followed district courts' rejection of similar applications for emergency relief. *See, e.g., Andre-Rodney v. Hochul*, --- F. Supp. 3d ----, No. 21 Civ. 1053, 2021 WL 5050067, at *1 (N.D.N.Y. Nov. 1, 2021) (denying preliminary injunction sought by New York State Security Services Assistants and Safety & Security Officers who work at hospitals in New York State against state regulation requiring vaccination for employment); *but see A. v. Hochul*, --- F. Supp. 3d ----, No. 21 Civ. 1009, 2021 WL 4734404, at *1 (N.D.N.Y. Oct. 12, 2021), *vacated and remanded sub nom. We The Patriots USA, Inc. v. Hochul*, No. 21-2179, 2021 WL 5103443 (2d Cir. Oct. 29, 2021).

225, then, emergency legal challenges to vaccination requirements for City employment and similar provisions have not succeeded.

### B.     The Instant Action

Plaintiff Aaron Abadi lives in New York City.  He alleges that EEO 225 and EO 78—which require vaccination against COVID-19 for participating in various indoor activities in the City, and either vaccination or weekly negative tests for employees of the City and its subcontractors, respectively—violate his federal constitutional and state common law rights.  *See* Mot. ¶¶ 16, 17, 25–26 (stating that executive orders "impinge[]" Abadi's "constitutional right to body integrity," "den[y] his right to Equal Protection" and "that this should be considered false imprisonment").

Abadi states that, in October 2020, he was infected with COVID-19, but has since fully recovered.  *Id.* ¶ 5.  Abadi states that his doctor told him that he "thus has natural immunity" and "he does not need to get the vaccine."  *Id.* ¶ 7.  Although Abadi "is not anti-vaccines," and "appreciates, respects, and understands" the City's efforts to vaccinate people who have never been infected with COVID-19, he takes issue with the "forcing of vaccines on those who already have natural immunity."  *Id.* ¶ 21.  Abadi acknowledges that the Centers for Disease Control and Prevention ("CDC") "continues to recommend vaccines to those who have recovered" from COVID-19, but he argues that the risk of reinfection "is relatively small" and that the CDC should have relied on studies using larger sample sizes.  *Id.* ¶¶ 9–10.  Abadi cites several studies that, as he reads them, indicate that he is "protected many times stronger than with vaccines" against COVID-19 infection.  *Id.* ¶ 28.

According to Abadi, the City's Executive Orders "deny [him] equal treatment and seek to burden [him] with an unnecessary violation of body integrity[.]"  *Id.* ¶ 23.  He explains that even though he is "the same or more immune" to COVID-19 as persons who have been vaccinated,

under the orders "the vaccinated individual can go to all these places and take any job," whereas

his mobility is "severely limited." *Id.* ¶ 25. This, Abadi claims, results in his "false

imprisonment": "I am allowed to leave my house, but cannot go into" the venues specified in

EEO 25 requiring proof of vaccination. *Id.* ¶ 26. Moreover, Abadi claims, the Executive Orders

limit his "ability to get a job or attempt to conduct business," exposing him to potential

irreparable harm. *Id.* ¶ 32 ("Not being able to go anywhere and not having work or money"

could have drastic effects, including "depression, anxiety, and other mental issues" and severe

economic straits.).

Abadi therefore seeks a preliminary injunction preventing the City "from enforcing the

Executive Orders against the naturally immune, or at least against [Abadi] specifically." *Id.* ¶

33.

### C.    Relevant Procedural History

On September 28, 2021, Abadi filed his complaint and motion for a preliminary

injunction. Dkts. 2–3. On September 29, 2021, Chief Judge Swain granted his application to

proceed *in forma pauperis*. Dkt. 4; *see* Dkt. 1. On September 30, 2021, this action was assigned

to this Court. On October 1, 2021, the Court issued an order of service. Dkt. 6. On December 7,

2021, the Court received a motion to expedite the case from Abadi. Dkt. 13. The same day, the

City responded, requesting an additional 20 days to respond to the complaint. Dkt. 14. On

December 8, 2021, Abadi replied. Dkt. 15. The same day, the Court granted the City's request

and denied Abadi's motion to expedite. Dkt. 16.

On December 27, 2021, the City filed its motion to dismiss the complaint, Dkt. 17, the

declaration of Jasmine Paul, Esq., Dkt. 18, and a memorandum of law in support of the motion to

dismiss and in opposition to the preliminary injunction, Dkt. 19. On December 28, 2021, Abadi

submitted an opposition to the motion to dismiss, and, on January 12, 2022, an amended complaint that expanded on his claims in the original complaint. *See* Dkts. 21, 22.

## II.     Applicable Legal Standards

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)); *see Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.").

"[T]o obtain a preliminary injunction against governmental action taken pursuant to statute, the movant has to demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction. The movant also must show that the balance of equities tips in his or her favor." *Libertarian Party of Conn. v. Lamont*, 977 F.3d 173, 176 (2d Cir. 2020) (alteration in original) (quoting *Yang v. Kosinski*, 960 F.3d 119, 127 (2d. Cir. 2020)). When the government is a party to the suit, the Court's "inquiries into the public interest and the balance of the equities merge." *We The Patriots USA*, 17 F.4th at 295 (citing *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020)).

Because Abadi is *pro se*, the Court construes his pleadings liberally. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). The "submissions of a *pro se* litigant must be . . . interpreted 'to raise the strongest arguments that they *suggest*.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) and collecting cases).

### III.   Discussion

More than a century ago, the Supreme Court recognized that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905).  Accordingly, it held that government action that "purport[s] to . . . protect the public health" from such an epidemic will be upheld unless it "has no real or substantial relation" to the object of public health or is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 31.

The two executive orders at issue here—both of which have been repeatedly upheld, either in their current form or in sister Executive Orders—plainly relate to public health objectives.  And Abadi has not shown that either works a "plain, palpable invasion" of his rights, constitutional or otherwise.  He is not entitled to emergency relief.

### A.   Irreparable Harm

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)).  An irreparable harm is a

> harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction. . . . Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer.

*Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (footnote omitted).

"In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Dixon*, 2021 WL 4750187, at *3 (quoting *Ferreyra v. Decker*, 456 F. Supp. 3d 538, 549 (S.D.N.Y. 2020)) (citing *Statharos v. N.Y.C. Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999)).  Abadi's claim for emergency relief is based, in part, on a claim that his

constitutional rights have been violated.  The Court will therefore assume *arguendo* that Abadi

has shown irreparable harm and will proceed to the other preliminary injunction factors.[9]  *See*

*Broecker v. New York City Dep't of Educ.*, No. 21 Civ. 6387, 2021 WL 5514656, at *5

(E.D.N.Y. Nov. 24, 2021) (because plaintiffs alleged violation of constitutional rights, "no

further showing of irreparable injury is necessary"; court's analysis focused on other injunctive

relief factors) (quoting *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984)).

**B.     Likelihood of Success on the Merits**

Abadi claims three violations of his Fourteenth Amendment rights to, as he puts these

claims, his rights to equal protection, bodily integrity, and to be free from false imprisonment.

He has not shown a likelihood of success on these claims.

**1.     Equal Protection Claim**

To establish an equal protection violation, a § 1983 plaintiff must prove "(1) [that he],

compared with others similarly situated, was selectively treated; and (2) that such selective

treatment was based on impermissible considerations such as race, religion, intent to inhibit or

punish the exercise of constitutional rights, or malicious or bad faith intent to injure a

person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (quoting *Lisa's*

*Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)).

---

[9] Some of Abadi's claims—those asserting that ordinance EO 78 limits his job opportunities—do
not implicate irreparable harm. "It is well settled . . . that adverse employment consequences . . .
are not the type of harm that usually warrants injunctive relief because economic harm resulting
from employment actions is typically compensable with money damages." *Kane*, 19 F.4th at
171 (quoting *We The Patriots USA, Inc*, 17 F.4th at 294). Relatedly, the City argues—in
opposing Abadi's application for a preliminary injunction and in moving to dismiss, Dkt. 19—
that Abadi lacks standing to challenge EO 78 because he is neither a City employer nor
contractor and because he has neither lost nor been denied employment on account of his
vaccination status. *Id.* at 2, 10–11. The Court will address those arguments in resolving what
the Court expects will be a motion to dismiss Abadi's amended complaint. The City does not
dispute that Abadi has standing to challenge EEO 225.

At the threshold, Abadi does not claim to be a member of a protected class or that the ordinances facially disfavor members of such a class. Instead, as the Eastern District in *Dixon* recognized in upholding EEO 225, both orders are facially neutral and apply across the board, to "*all* unvaccinated individuals, regardless of race, religion, or national origin"—under them, all persons "are treated the same." 2021 WL 4750187, at \*4 (emphasis added). The ordinances apply equally to any New Yorker or visitor to the City. All such persons are free to access the venues specified in EEO 225, provided they can show proof of vaccination, or, under EO 78, to apply for or secure City employment.[10] Nor does Abadi argue that the orders have been "applied in a discriminatory fashion." *Id.*

Abadi attacks instead the distinction the ordinances draw between vaccinated persons and those who choose to remain unvaccinated. He argues that he "should be treated the same as someone who was vaccinated," Mot. ¶ 16, because, having recovered from COVID-19, he is "the same or more immune" as a vaccinated person, and presents no greater risk to public health, *id.* ¶¶ 23, 25.

Notwithstanding that the ordinances do not draw a distinction based on a constitutionally protected characteristic, a plaintiff like Abadi may still pursue "an equal protection claim on one of two theories: selective enforcement or 'class of one.'" *Bunn v. City of Poughkeepsie*, No. 10 Civ. 2297 (PAE), 2012 WL 1621563, at \*3 (S.D.N.Y. May 9, 2012) (internal quotation marks and citations omitted); *see also Cobb v. Pozzi*, 363 F.3d 89, 109 (2d Cir. 2004). It is unclear

---

[10] EO 78 requires employees and contractors to *either* be fully vaccinated against COVID-19 *or* submit weekly negative COVID-19 PCR diagnostic tests. Mot., Ex. H §§ 1, 3. Abadi here contests only the vaccination provision, not the testing requirement. As noted, aspects of EO 78 have since been overtaken by EO 83. *See supra* I.A.2.a.

whether Abadi means to pursue either theory. But, viewing his pleadings with solicitude, the Court assumes *arguendo* that Abadi has pled both. Such claims, however, are meritless.

"To succeed in an action alleging selective prosecution, plaintiffs in this Circuit 'have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Cobb*, 363 F.3d at 110 (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)). Similarly, a class-of-one claim "requires the plaintiff to allege facts showing that the plaintiff 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Missere v. Gross*, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011) (quoting *Analytical Diagnostic Labs., Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010)). "Both claims thus require [Abadi] to adduce evidence demonstrating that he was, in fact, treated differently from similarly situated comparators." *See Bunn*, 2012 WL 1621563, at *3. Nowhere does Abadi do so. Rather, as noted, although Abadi continually draws a distinction between himself and individuals who are vaccinated, he does not plead, let alone show, that (1) the differential treatment is based on impermissible considerations or (2) treating him differently from unvaccinated people lacks a rational basis. Quite the contrary, as discussed *infra* § III.C, "[s]temming the spread of COVID–19 is unquestionably a compelling interest[.]" *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam). And vaccination demonstrably "slows infection rates and reduces the spread of the disease," and, where the disease is thereafter contracted, stands to mitigate the severity of its symptoms, resulting in a lessened burden on the healthcare system. *See Clementine*, 2021 WL 5756398, at *16. Whatever Abadi's opinions may be about the

15

executive orders as a matter of public policy, the distinction they draw between vaccinated and non-vaccinated persons has an amply rational basis. *Cf. Troogstad v. City of Chicago*, No. 21 Civ. 5600, 2021 WL 5505542, at *4 (N.D. Ill. Nov. 24, 2021) ("[T]he questions Plaintiffs raise about the efficacy of vaccines as compared to natural immunity do not persuade the Court that Defendants' policies lack a rational basis."); *Strong v. Zucker*, No. 21 Civ. 6532L, 2022 WL 245351, at *5 & n.6 (W.D.N.Y. Jan. 27, 2022) (denying emergency relief against masking, testing, and vaccination requirements where "the gist of all plaintiff's claims is that the state is irrationally and unfairly drawing distinctions between vaccinated and unvaccinated persons, particularly unvaccinated persons who have already contracted COVID-19").

Abadi thus fails to show a likelihood of success on the merits of an equal protection claim. In so holding, the Court joins the uniform bloc of courts in this Circuit, as reviewed above, to so hold. *See, e.g., Dixon*, 2021 WL 4750187, at *4 (in suit challenging EEO 225 and other orders adopted in the wake of COVID-19, holding that "[p]laintiffs' equal protection claim fails because they have not shown that the EEOs target a protected class, are the result of animus, or are not rationally related to a legitimate government interest"); *Clementine*, 2021 WL 5756398, at *8, *15 (denying request for preliminary injunction based on equal protection and other claims where plaintiffs, small theaters and comedy clubs in New York City, "have not demonstrated that they are treated differently from any similarly situated enterprises"); *Maniscalco*, 2021 WL 4344267, at *5 (denying equal protection challenge to order mandating COVID-19 vaccination for DOE employees); *cf. Klaassen v. Trs. of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (denying request for injunction pending appeal by students at Indiana University, which required COVID-19 vaccination unless the students are exempt for religious or medical reasons, and stating that, "[g]iven *Jacobson v. Massachusetts*, which holds that a state

may require all members of the public to be vaccinated against smallpox, there can't be a constitutional problem with vaccination against" COVID-19) (internal citation omitted)).

### 2.   Bodily Integrity Claim

Abadi next argues that his "constitutional right to bodily integrity is impinged by the Executive Orders" because they "attempt to coerce everyone . . . to get vaccinated." *See* Mot. ¶¶ 17–18. The Court construes Abadi, in so arguing, to bring a § 1983 claim of a denial of substantive due process in violation of the Fourteenth Amendment. *See, e.g. Doe v. Zucker*, 520 F. Supp. 3d 217, 257–58 (N.D.N.Y. 2021).

Long-standing Supreme Court precedent, however, prevents Abadi from establishing a likelihood of success on this claim. In *Jacobson*, the Court upheld as justified by the public interest a Cambridge, Massachusetts law, enacted during a smallpox pandemic, that required vaccination on penalty of fine or imprisonment. 197 U.S. at 26–27. The Executive Orders at issue here, adopted during the present pandemic, do not carry nearly such onerous consequences. Abadi does not face fine or imprisonment or any punishment for his decision not to get vaccinated. They instead limit his access to dining, fitness, recreation venues, and the like. *See* Mot. ¶ 23 (Abadi claiming that he is burdened "with an unnecessary violation of bodily integrity . . . in order to be allowed to *apply for a job, go to the gym*, [or] *eat in a restaurant*," among other activities) (emphasis added).

It follows from *Jacobson* that an ordinance leaving Abadi's person untouched, while imposing limits on the establishments that the non-vaccinated may enter during an ongoing pandemic, does not impermissibly infringe on his bodily integrity.[11] Critically, in contrast to the

---

[11] To the extent Abadi construes EO 78 to prevent him as an unvaccinated person from applying for City jobs, *see* Mot. ¶¶ 16, 32, that claim misreads EO 78, which, by its terms, does not do so. It instead requires City employees and contractors to show proof of vaccination or potentially be

statute upheld in *Jacobson*, the City has not mandated Abadi's vaccination, a point that courts have consistently made in upholding these and similar ordinances adopted during the COVID-19 pandemic. As these courts have noted, a person in Abadi's circumstances has a choice to make. *See We The Patriots*, 17 F.4th at 294 ("Vaccination is a condition of employment in the healthcare field; the State is not forcibly vaccinating healthcare workers."); *Dixon*, 2021 WL 4750187, at *9 ("[T]hese EEOs are not forcing New Yorkers to get vaccinated. They are merely placing restrictions on those who choose not to."); *see also Zucker*, 520 F. Supp. 3d at 258 ("Plaintiffs' right to an education under New York State law is limited by the New York's mandatory school vaccination requirement, and 'the case law clearly establishes that conditioning school enrollment on vaccination has long been accepted by courts as a permissible way for States to inoculate large numbers of young people and prevent the spread of contagious diseases.'" (quoting *V.D. v. New York*, 403 F. Supp. 3d 76, 87 (S.D.N.Y. 2019)) (cleaned up); *Klaassen*, 7 F.4th at 593 ("Indiana does not require every adult member of the public to be vaccinated, as Massachusetts did in *Jacobson*. . . . People who do not want to be vaccinated may go elsewhere" than Indiana University).

In the end, as the Supreme Court held in *Jacobson*, "the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint." 197 U.S. at 26. *Jacobson* and its progeny—including the recent decisions upholding the very executive orders Abadi challenges and similar ones—dispose of Abadi's claim to have established a likelihood of success on the merits of his claim of an unconstitutional infringement

---

subject to disciplinary consequences. *See* Mot., Ex. H. It imposes no restrictions on who may apply for City jobs.

on his bodily integrity. *See We The Patriots*, 17 F.4th at 293 ("Plaintiffs provide no basis for concluding that the vaccination requirement here, considerably narrower than the city-wide mandate in *Jacobson*, violates a fundamental constitutional right."); *Klaassen*, 7 F.4th at 593 ("*Jacobson*, which sustained a criminal conviction for refusing to be vaccinated, shows that plaintiffs lack such a [fundamental] right.  To the contrary, vaccination requirements, like other public-health measures, have been common in this nation.").

### 3.    False Imprisonment Claim

Abadi also claims that the Executive Orders falsely imprison him.  "Under New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).  "A false imprisonment claim requires a *prima facie* showing of actual confinement or threatening conduct." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 294 (S.D.N.Y. 2011) (quoting *Lee v. Bankers Tr. Co.*, No. 96 Civ. 8153 (DAB), 1998 WL 107119, at *4 (S.D.N.Y. Mar. 11, 1998), *aff'd*, 166 F.3d 540 (2d Cir. 1999)).  Far from demonstrating a likelihood of success on the merits, as to this claim, Abadi fails to plead the required elements.

Abadi's complaint does not allege that he has actually been confined or subject to threatening conduct, much less that the City had the requisite intent to do so.  It instead alleges that it "should be considered false imprisonment" that he cannot go into the entities covered by EEO 225. Dkt. 2 ¶ 24.  In seeking a preliminary injunction, Abadi asserts that "[i]mprisonment is not only when the person is being physically contained" and "[p]risoners in actual prisons often have access to more than I currently have access to." Mot. ¶ 26.

Abadi's conception of imprisonment, however, is not supported by the caselaw, which requires confinement, not merely the placing of conditions on a person's right to enter certain establishments. As the Second Circuit has put the point: "[F]alse imprisonment is characterized by detention without legal process." *Watson v. United States*, 865 F.3d 123, 131 (2d Cir. 2017) (cleaned up); *see also King v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir. 1997) ("To be liable for false imprisonment, the plaintiff must prove that the defendant *intended* or *instigated* the confinement of the plaintiff.") (emphasis in original); *Lee*, 1998 WL 107119, at *4 ("A false imprisonment claim requires a prima facie showing of actual confinement or threatening conduct.") (citing cases); *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 352 (S.D.N.Y. 2000) (dismissing claim of false imprisonment where plaintiff was "questioned outside her home . . . not touched during the encounter . . . not told she was not free to leave, and she did not ask the officers to leave her property," so that there was not "any inference that Plaintiff was 'confined' in any legal sense"). And Abadi's hyperbole that "prisoners in actual prisons" are less restricted than he is legally irrelevant, unsupported by his factual allegations, and grossly ignorant of the heightened restrictions and onerous circumstances that prison inmates have faced during the pandemic.[12] Abadi's false imprisonment claim is not likely to succeed on the merits.

## C.   Public Interest and the Balance of the Equities

Finally, the public interest and the balance of the equities would be disserved by granting the injunction Abadi seeks. The City is well within its rights to take measures, including the Executive Orders at issue, to slow the spread of a pandemic that has killed hundreds of thousands in this nation. As the Supreme Court has put the point: "Stemming the spread of COVID-19 is

---

[12] *See, e.g.*, *United States v. Phillibert*, --- F. Supp. 3d ----, 2021 WL 3855894, at *4 (S.D.N.Y. Aug. 27, 2021) ("[A] day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison[.]") (collecting cases).

unquestionably a compelling interest[.]" *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 67. And as the courts that have upheld the Executive Orders here and similar ones have uniformly recognized, these are rationally related to the City's interest in slowing the pandemic's spread. *See We The Patriots USA*, 17 F.4th 266; *Maniscalco*, 2021 WL 4344267; *Dixon*, 2021 WL 4750187; *Clementine*, 2021 WL 5756398; *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (Roberts, C.J., concurring) ("Our Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'") (quoting *Jacobson*, 197 U.S. at 38); *id.* (where state officials "'undertake[ ] to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad'" (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974))).

There is no basis for this Court to second-guess the determinations of elected officials, upheld by sister courts, that the measures at issue here further the public interests, and that the balance of interests favors maintaining this order during the balance of this litigation. "[C]ourts in this Circuit have routinely refrained from quarterbacking the government's response to the COVID-19 pandemic from the bench." *Clementine*, 2021 WL 5756398, at *16 (citing *Hopkins Hawley LLC v. Cuomo*, 518 F. Supp. 3d 705, 718 (S.D.N.Y. 2021)) (cleaned up); *see, e.g., We The Patriots USA*, 17 F.4th at 295 ("[T]he State has an indisputably compelling interest in ensuring that the employees who care for hospital patients, nursing home residents, and other medically vulnerable people in its healthcare facilities are vaccinated against COVID-19[.]"); *Commey*, 2022 WL 62155, at *2 (denying request for temporary restraining order against EEO 225 because "[p]laintiff has not demonstrated either a likelihood of success on the merits of his claims or sufficiently serious questions going to their merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in his favor"). COVID-19 "poses a

dangerous public health risk, [and] the rampant spread of the disease threatens to overburden the hospital system and increase the risk of death and serious illness." *Clementine*, 2021 WL 5756398, at *16. Because "vaccination slows infection rates and reduces the spread of the disease[,] requiring vaccination to participate in indoor recreational activities is [a] reasonable measure to incentivize vaccination, which is clearly the interest of the public health." *Id. See also, e.g., Dixon*, 2021 WL 4750187, at *14 (although it may be "difficult for plaintiffs to adapt to restrictions on public spaces . . . New York City's 'interest in combatting COVID-19 is at least equally significant'") (quoting *Columbus Ale House, Inc. v. Cuomo*, 495 F. Supp. 3d 88, 94 (E.D.N.Y 2020)); *id.* (the EEOs at issue "address the risks arising from a substantial portion of the population remaining unvaccinated . . . [and] not only attempt to reduce the risk that unvaccinated individuals will contract and spread the disease, but also ensure that New York City's healthcare system is not overwhelmed").

Courts have similarly so recognized in denying emergency relief against other New York City and State measures to reduce the spread of COVID-19. *Hopkins Hawley LLC*, 518 F. Supp. 3d at 718 ("To preserve the public health and mitigate further needless death, Governor Cuomo took drastic steps aimed at stopping the spread of the COVID-19 virus. He was entitled to take these measures pursuant to the police powers delegated to the legislative and executive branches."); *Geller v. de Blasio*, No. 20 Civ. 3566 (DLC), 2020 WL 2520711, at *4 (S.D.N.Y. May 18, 2020), *appeal withdrawn*, No. 20-1592, 2020 WL 4760303 (2d Cir. June 8, 2020) ("As there is no evidence to suggest that the City has misunderstood the dangers of person-to-person spread of COVID-19, the Court declines to second guess the City's measure that clearly seeks to mitigate this risk."). Beyond his denunciations of the executive orders at issue, Abadi has not

shown that granting the injunction would further the public interest, or that the balance of interests favors enjoining orders.

## CONCLUSION

The Court accordingly denies Abadi's motion for a preliminary injunction, finding that his challenge to Emergency Executive Order 225 and Executive Order 78 is unlikely to succeed on the merits and that the public interest and the balance of the equities would be disserved by enjoining these orders.

The Clerk of the Court is respectfully directed to close the motion pending at docket entry 3. The City is reminded, by February 7, 2022, to (1) file an answer to Abadi's amended complaint; (2) file a new motion to dismiss; or (3) submit a letter to the Court, copying Abadi, and stating that it relies on its previously filed motion to dismiss.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Paul A. Engelmayer

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: February 4, 2022
       New York, New York